BARBER ASPHALT PAV. CO. v. ODASZ.

(Circuit Court of Appeals, Second Circuit. March 2, 1898.)

No. 58.

1. **TRIAL—DISCRETION OF COURT—INTERPRETER.**

A sister of plaintiff was a witness for him, and also acted as interpreter on the first trial without objection. On the second trial, defendant objected. *Held* that, while it would have been better to have a disinterested interpreter, yet, under the circumstances, the matter was in the court's discretion.

2. **MASTER AND SERVANT—PERSONAL INJURIES.**

In an action to recover for the death of a workman by the falling upon him of a tram car from a trestle, the uncontradicted evidence showed that there was no proper guard rail to prevent the car from jumping the track. There was some evidence that a guard chain was customary, and should have been used in dumping, but plaintiff's attorney, in addressing the jury, stated that he claimed no negligence on that ground. The court, however, told the jury that the absence of a guard chain might be considered. *Held* that, even if this were erroneous, it was immaterial, as the absence of a guard rail was of itself sufficient to support a verdict for plaintiff.

3. **SAME—SAFE PLACE TO WORK.**

An employé is not entitled to an absolutely safe place to work in, but only to a reasonably safe place, and to reasonable care on the part of his employer in view of the situation and the danger.

In Error to the Circuit Court of the United States for the Eastern District of New York.

This cause comes here upon a writ of error to review a judgment of the circuit court, Eastern district of New York, in favor of defendant in error, who was plaintiff below. The judgment was entered upon a verdict awarding damages against plaintiff in error, who was defendant below, for negligence causing the death of plaintiff's intestate. The cause has been twice tried, a former judgment in favor of plaintiff having been reversed by this court. 20 U. S. App. 326, 8 C. C. A. 471, and 60 Fed. 71. It appeared upon both trials that deceased was in the employ of defendant as a workman in its yards at Long Island City; that in said yards there was a trestle extending about 500 feet, upon which sand, gravel, and asphalt were conveyed in tram cars weighing about 1,100 pounds empty and 4,800 pounds when loaded with sand. The trestle was built of beams fastened upon a foundation of posts sunk in the ground, and braced with cross-pieces in the usual manner of such structures. The trestle was about 20 feet in height, and along the top ran string pieces, across which were fastened ties. On the ties were laid iron T rails about 30 inches apart. There was a flooring of planks between the rails. The car which ran on the track was four-wheeled, about 4 feet in length between the front and rear axles, carrying an iron V-shaped hopper or basket 7 feet in length and 5 feet in width at the top, suspended at its ends on iron trunnions. The hopper was about five feet and a half high from the rails to the top of the hopper, and was so adjusted as to discharge its load on either side of the car when a small catch was loosened, and slight pressure exerted at the top of the hopper. On the day in question deceased was employed, with others, in shoveling sand on the pile below the tramway. The car above, pushed by one man and pulled by another, had just dumped a load of sand on the pile, and the hopper had been tipped back to its upright position, the catch had been fastened, and the men in charge of it had pushed the car some feet on the return trip,

when it suddenly toppled off the track, and fell upon decedent, inflicting injuries from which he died. This statement of facts is taken from defendant's brief, and is not disputed in any way. There was evidence tending to show that cars had gotten off the track several times before during the seven months preceding the accident.

Edw. J. Wells, for plaintiff in error.

Raphael J. Moses, for defendant in error.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts). There are 60 assignments of error, some of them involving several different propositions. To review them seriatim would be a mere academic discussion, since upon the facts conceded by defendant and proved by its own witness it must be assumed that an intelligent jury would render the same verdict already twice recorded. The experts called for defendant testified that a guard rail is generally used on elevated roads, trestles, and bridges; that it would be impossible to say how long it had been used,—probably since railroads have been built,—and that it was in common use before the accident; that the guard rail is put there so that, if the car runs off the track, it shall not run off the trestle, its object being that, when the wheel of the car lifts because of some obstruction on the track, the guard rail will guide the wheel back into its proper place again; that in most cases it is put on the inside of the rail, but that, when the flanges of the wheels are on the outside of the rail, the guard is put on the outside. It hardly needs expert testimony to inform us that, to be reasonably efficient, the guard rail should be next to the flange, rather than next to the tread, nor that there should be a substantial difference in height between the rail and the guard; otherwise, when the wheel lifts, even slightly, the guard will not engage with it to guide it back. All this was well known, and a usual method of construction of trestles, long before the accident. There was a strip of planking bolted down on this trestle, and running continuously outside of the rails, the flanges of the car wheels being on the inside. One witness for the defense testified that the planking which was supposed to do duty as a guard rail was about half an inch higher than the rail itself; another testified that it was a quarter of an inch lower. In view of this testimony, which was given by defendant's own witnesses, it is not difficult to reach a conclusion as to the cause of the accident,—either some sand spilled upon the track, or some jerk by the men moving the car, caused a wheel to "lift," and, there being no sufficient guard rail next the flange to guide the wheel back to the track, the car moved on off the trestle. If all the testimony introduced by the plaintiff which defendant objects to as improper were excluded, and the charge conformed most closely to the law of master and servant, it is to be presumed that the verdict of any intelligent jury, deciding the question of fact as to reasonable care on the master's part in furnishing a reasonably safe place for its servants to work in, would be the same as that already twice rendered in this cause. While we do not intimate that this review is sought for delay, nor that there are not fairly arguable assignments of error, the facts above set forth make it unnecessary to enter into any elaborate discussion of them.

Such of the assignments as are discussed in the points may be briefly adverted to.

1. The court allowed a sister of the plaintiff, who also testified as a witness, to act as interpreter, under objection and exception. The same person had acted as interpreter on the former trial without objection, and under the particular circumstances we think it was within the discretion of the trial judge. Railroad v. Shenk, 131 Ill. 283, 23 N. E. 436. The practice, however, is not one to be encouraged, and it will usually be better to continue the cause until the services of a wholly disinterested interpreter can be secured. State v. Thompson (Wash.) 44 Pac. 533.

2. On the former appeal, judgment was reversed because evidence was admitted showing what changes had been made by defendant in the structure after the accident. The same evidence was introduced on the second trial, but under different circumstances. A witness for the defendant, describing the condition of the structure at the time of the accident, testified on the direct that there was a guard rail. Upon cross-examination plaintiff's counsel asked him if it had not in fact been put there after the accident.

3. The contention that it was error not to direct a verdict for defendant has been already disposed of.

4. There was evidence given by some of the plaintiff's witnesses that they had occasionally seen a guard chain used on such structures, by which the car was chained down to the trestle when being dumped. It did not appear that this was a usual or common appliance. It is assigned as error that the trial judge "submitted to the jury the question whether defendant was negligent in failing to provide a guard chain on its car." It appears that the counsel for plaintiff, in his closing address to the jury, told them that he did not make any claim that defendant was negligent in not having a guard chain, on the strength of which statement defendant's counsel asked the court to charge that the jury should disregard the testimony of plaintiff's witnesses, and not consider the question of the guard chain at all. What plaintiff's counsel may have said in his closing address has little to do with the question. A trial judge sums up the case to the jury upon the issues raised by the pleadings (modified as they may be by any stipulations or concessions formally entered upon the record) and upon the evidence, not upon the dissertations of counsel. The court instructed the jury that "the fact of there ever being such a chain used on such a car is only to be considered by you as bearing on the question whether anything was necessary to keep the car on the track." Of course, if there was a proper guard rail, nothing else was necessary, and, if they believed there was such a guard rail, the jury would, under the instruction, not be called upon to consider the question of the chain. In the next sentence, however, the court used language which might be construed as leaving it to the jury to say whether there should have been a chain. We are not satisfied, however, that defendant was harmed by such instruction. If there were really any doubt, upon the evidence, as to whether a usual and proper guard rail were wanting, the question presented by this assign-

ment would be different. If the jury were warranted in finding there was such a guard rail, and so found, they should not have been allowed to speculate as to some unusual appliance which might possibly have been added. But, if they were satisfied that there was no usual and proper guard rail, that was enough to support their verdict, without any additional finding as to the absence of a chain; and, since the uncontradicted evidence showed that there was no such guard rail, we must assume that the jury so found, in which case any conclusion they may have reached upon the question of the chain would be immaterial.

5. We find no error in the rest of the charge. The jury were instructed, in substance, that the plaintiff was not entitled to an absolutely safe place to work in, but was entitled to one reasonably safe; that the duty of the defendant was to do what was reasonable in view of the situation and the danger; that defendant was to exert reasonable care, such as was to be expected from prudent men; and that, if the injury was caused solely by the carelessness of the men running the car, then the defendant would not be liable. The court was under no obligation to restate this in the precise language suggested by defendant.

The judgment is affirmed.